158

# CIRCUIT COURT OF AUGUSTA COUNTY

Marsha Mathes,
Administratrix
of the Estate of
Charles W. Mathes,
deceased

v.

General Motors, L.L.C.,
and Elliott Chevrolet, Inc.

September 4, 2015

Case No. (civil) CL12001623-00

BY JUDGE VICTOR V. LUDWIG

Plaintiff, Marsha Mathes (Mathes), administratrix of the Estate of Charles W. Mathes, brings this action to recover on a product liability claim. Mathes alleges that the occupant safety system manufactured by Defendant, General Motors, L.L.C. (GM), failed to perform in a reasonable and safe manner resulting in Mr. Mathes' demise. GM moves for the adoption of a joint coordination order (the JCO) in accordance with Virginia Supreme Court Rule 4:1(b), arguing the issue surrounding the failure substantially overlaps with a federal multidistrict litigation (the MDL) pending in the Southern District of New York which offers a more convenient avenue for discovery and prevents unreasonably duplicative efforts.

Notwithstanding the goals of lessening administrative burdens and accommodating convenience, the Court does not have the statutory authority to grant the motion or the inherent authority to do so over the objection of a party. Accordingly, the Court denies the motion to adopt the JCO.

*Background*

On December 17, 2010, Charles W. Mathes was traveling on Route 11 in Augusta County, Virginia, when his 2002 Chevrolet Impala allegedly "went out of control" and struck a tree. While Charles survived the impact, he succumbed to his injuries nearly one month after the crash.

Two years later, Mathes, Charles' widow and administratrix of his estate, filed a complaint against GM, as the vehicle's manufacturer, and Elliott Chevrolet, Inc., as the retailer. Mathes initially alleged that the vehicle's occupant safety system (specifically, the airbag) failed to perform in a reasonable and safe manner. More than two years after filing the initial complaint, Mathes moved to amend the complaint to include allegations regarding the failure of the ignition switch to remain on, with the consequence that the airbag failed to deploy. The Court has not yet entered an order permitting the amended complaint to be filed, nor has one been properly submitted for the purpose.

The United States Judicial Panel on Multidistrict Litigation (JPML) established MDL 243, *In re General Motors, L.L.C., Ignition Switch Litig.*, to conduct coordinated or consolidated pretrial proceedings in regards to actions against GM involving claims of defective ignition switches. Having found it proper to do so pursuant to 28 U.S.C. § 1407, the JPML assigned the matter to the Honorable Jesse M. Furman of the United States District Court for the Southern District of New York (the MDL Court). According to GM, more than one hundred actions "have since been filed in, or transferred to, the MDL Court" in accordance with 28 U.S.C. § 1407.

Expressly in response to Mathes' intention to amend her complaint, GM moves this Court to adopt a joint coordination order authored by Judge Furman that would transfer discovery requests concerning GM ignition switches to the MDL Court.

Given that the focus of the litigation being managed by Judge Furman is the ignition switch and given that the complaint currently pending in this Court (not yet amended) contains no reference to the ignition system, the decision should be an easy one. Indeed, Judge Furman and I discussed this matter long before any party raised it in this proceeding and concluded that the issues of the failure of the ignition switch and the failure of the airbag to deploy were, without some allegations of a connection, unrelated. The yet-to-be-filed complaint does make that connection, so I will not dismiss the motion on that technical ground because it is my suspicion that, at some point, someone will actually put the issue of the amendment of the complaint on the docket for hearing. There might even be a consent order, but I am beginning to doubt that.

## Analysis

While this Court may exercise judicial discretion to ease discovery burdens and lower costs, it is not bound by any federal statute that does not preempt. the Commonwealth's jurisdiction. Moreover, the express language of the governing federal statute limits the reach of MDL Courts to pending federal cases. The scope provision of Chapter 87 of the United States Code is found in 28 U.S.C. § 1390, and it speaks generally to federal district courts, including the "venue of a civil action in which the district

court exercises jurisdiction by section 1333, except that such civil actions may be transferred between district courts as provided in this chapter." *Id.* § 1390(b). To be sure, it also speaks to venue in "a civil action pending in a State court [which is] removed [to the federal system]," but it does not refer to cases which remain in the courts of other sovereigns, unsullied by removal. *Id.* § 1390(c); *see also In re Celotex Corp. "Technifoam" Products Liab. Litig.*, 68 F.R.D. 502, 503, n. 2 (J.P.M.L. 1975) ("There are numerous other actions pending in federal and state courts. . . . The Panel, of course, does not have the power under Section 1407 to consider the propriety of coordinated or consolidated pretrial proceedings in state court actions.").

As to those cases for which Congress has provided, through 28 U.S.C. § 1407, a method to consolidate civil actions that pose common question of fact in different districts throughout the nation, the statute emphasizes a concern for party convenience and judicial efficiency. Nevertheless, this type of collaboration is an exclusively federal function. *Id.* § 1407(a) ("When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings."). Again, by its terms, it is limited to cases "pending in different districts" of the federal system (presumably whether originating or removed there).

Despite Virginia Supreme Court Rules that exalt the virtues of pretrial expediency, this Court cannot add to the language of § 1390, especially when an explicit, affirmative grant of power exists. *See Raleigh & G. R. Co. v. Reid,* 80 U.S. 269, 270 (1871) ("When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode."). The federal statutes clearly permit Judge Furman to act with respect to federal cases and with respect to state cases which are removed to federal courts, but it is unclear to me how the statute authorizes the far more reaching application to which it has been put. I am quick to note that my observation is no criticism of Judge Furman. On the contrary, I believe him to be a dedicated, capable, and brave jurist to undertake what he has done. I suspect, in some instances, it is like herding cats.

I asked GM for specific authority to which this Court could look to compel a party to participate in this (or any other) MDL, and GM acknowledged that there is no statute, rule, or case law on point. Nevertheless, GM offered three suggestions on which, by extension or analogy, the Court might rely on its inherent authority to act.

To be clear, the Commonwealth has not failed to recognize the virtue of coordinating efforts among courts. *See, e.g.*, Multiple Claimant Litigation Act, Va. Code Ann. § 8.01–267.1 (providing Virginia state courts with the power [subject to a number of findings and factors] to enter orders joining, coordinating, consolidating, or transferring civil actions between one another). Yet this power does not extend to interactions between the Commonwealth and the United States. *See* Va. Code Ann. § 8.01–267.4;

*see also* Yvette Ostolaza & Michelle Hartmann, *Overview of Multidistrict Litigation Rules at the State and Federal Level,* 26 Rev. Litig. 47, 65-66 (2007) ("Absent a basis for removal jurisdiction, there is no formal mechanism to coordinate related state and federal MDL proceedings. . . . As a result, a significant number of cases that are well-suited for consolidation under the MDL Statute . . . are being handled on an isolated basis in state courts.").

First, the Court has inherent authority to consolidate cases. However, that analogy fails because the consolidation of causes assumes (a) that the cases all involve identical (or nearly identical) subject matter and legal issues and (b) that they can efficiently be heard at one time because only the parties are different; consolidation does not, however, require a concert of action by the parties in trial preparation or discovery (although the parties might elect to combine forces in that regard). More important, the same court is in control of all phases of the case, permitting it to consider the impact of the discovery process on the overall progress of the case, for example, the scheduling of other motions. That is not at all the same as obliging an objecting party to participate in a proceeding entirely foreign to the court in which the case is pending.

Second, GM suggested that the Court has inherent authority to stay proceedings pending the outcome of a federal case, implying that the Court can impose its will (in the exercise of discretion) to accommodate a federal impact on a pending case. The cases which GM cited were not persuasive (indeed, they were hardly worth citing). The court in *Woods v. Commonwealth,* 50 Va. Cir. 337 (City of Richmond 1997), referred only in passing to a previous order which stayed proceedings, with no analysis or even history of how the order came to be entered. In *Midway Fed. Credit Union v. W. J. Noland & Co.,* 37 Va. Cir. 295, 295 (Loudoun Cnty. 1995), the Court stayed the proceeding because the defendant had pursued arbitration in a federal court. ("The issue of the arbitrability of the instant claims may be raised either before this Court, by way of a motion to stay and compel arbitration, or by the filing of a petition in a Federal Court otherwise having jurisdiction over such claims.") (citation omitted). Although the Court couched its decision in terms of judicial discretion, the facts recited indicate that the case was subject to the provisions of the Federal Arbitration Act, which provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing

the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Noland had moved that the proceeding be stayed; the only discretion that the Court could exercise was whether it was satisfied that the proceeding was referable. If so, the stay was mandatory. It was not an exercise of inherent authority. And I certainly agree that no court of the Commonwealth should "mandate a duplicitous proceeding when the exercise of judicial discretion can avoid such a result." *Midway*, 37 Va. Cir. at 295. A duplicative proceeding is undesirable; a duplicitous one is absolutely unacceptable.

Third, GM argued that trial courts can make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Shenandoah Publ'g House, Inc. v. Fanning*, 235 Va. 253, 261-62 (1988) (citing Va. Sup. Ct. R. 4:1(c)). That broad statement is hardly the authority which I requested for the narrow issue before me.

Finally, assuming that this Court is given to a herd mentality (or at least to a democratic approach to the application of the law), GM noted that a "multitude of states have freely participated in coordination of state and federal discovery in related cases nationwide." In its initial motion, GM had observed that eleven states had already entered orders adopting the JCO. That is true, but in each case, the order was one to which the parties agreed. GM cited no case in which a state court adopted the JCO over the objection of a party. Hence, in those cases in which the court adopted the order, both parties saw the benefits which GM underscores and were willing to cede some measure of control over the conduct of their cases. The fact that the courts approved the course the parties embraced simply is not authority for the Court to impose the result GM seeks on the reluctant plaintiff.

## Conclusion

Because the express language of 28 U.S.C. §§ 1390 and 1407 expressly limits multidistrict transfers to actions pending in the federal courts, the Court denies GM's Motion To Adopt the Joint Coordination Order. Even if I am wrong about that (and obviously many state courts think I am) and even if the federal statute specifically contemplated a participation by state courts in cases not removed to the federal system, I cannot find any authoritative basis on which to grant the Motion over Mathes' objection, although I see some advantages to both parties to do so.

As a final observation, as counsel should be aware, this Court has little love for discovery disputes and less patience for parties who use the discovery system as a hammer to increase costs to the other side either to exact a settlement or to wear down the opposing party. Not that I am at all suggesting that that is or will be a problem in this case; on the contrary,

despite this initial dispute as to a detail of how discovery will be pursued (or not), I am confident that this case will proceed with all parties acting in good faith, both in making reasonable demands for information and in promptly and fully responding to properly crafted discovery requests.